***********
The undersigned have reviewed Dr. Eric Rhoton's deposition and the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the defendant's brief and argument. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. Therefore, the Full Commission enters the following Opinion and Award:
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At the hearing before the deputy commissioner, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (1), a Correspondence to Plaintiff from the Department of Veterans Affairs, which was admitted into the record, and marked as Stipulated Exhibit (2), and an Industrial Commission Form 22 Wage Chart, which was admitted into the record, and marked as Stipulated Exhibit (3).
2. Defendant submitted a Correspondence to Plaintiff from GEHA at the hearing before the deputy commissioner, which was admitted into the record, and marked as Defendant's Exhibit (1).
3. The deposition of Eric L. Rhoton, M.D., taken on 27 May 2003, has been received and admitted into evidence.
 ************ EVIDENTIARY MATTERS
Subsequent to the hearing before the deputy commissioner, responses from Dr. Eric Rhoton and Ms. Christy Gunther, M.A., L.P.C., to a letter from plaintiff's former attorney David Gantt were submitted by plaintiff. Over defendant's objections, the deputy allowed the documents. However, because defendant did not stipulate to the documents and were not allowed to exercise its right of cross-examination, the Full Commission re-opened the record for depositions of plaintiff's medical providers. Thus, since Dr. Rhoton's deposition was taken on 27 May 2003, this response is allowed herein. However, Christy Gunter's deposition was not taken, therefore her response to the letter is not received into evidence.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the deputy commissioner, plaintiff was fifty-four years of age, with his date of birth being 14 January 1948. Plaintiff completed high school, and received some computer training at a technical college.
2. Plaintiff's primary employment is with the United States Department of Commerce's National Climatic Data Center, where he works as a computer operator, and has been employed for twenty-three years.
3. Plaintiff began his employment with defendant-employer in early 1999 in a part-time janitorial position. Plaintiff took this position to supplement his main source of income. In this janitorial position, plaintiff performed the duties necessary to clean offices to which he is assigned.
4. On 25 June 1999, plaintiff was working in his position for defendant-employer at a medical diagnostic laboratory, and was taking out bags of trash when he slipped and fell on steps that were wet. As a result of this fall, plaintiff's left thigh was punctured by something contained in one of the trash bags. Upon inspection of the punctured bag, plaintiff discovered broken glass, bags of blood, parts of a syringe, and other medically related trash. Plaintiff was not able to determine definitively what item punctured his left leg. There were no witnesses to this incident.
5. Mr. Bill Morgan, plaintiff's immediate supervisor was notified of the incident on June 27, 1999 by one of plaintiff's co-workers. Because there was blood in the bag, and the skin on his leg had been punctured, plaintiff was concerned about the possibility that he had been exposed to the HIV virus.
6. Following the incident in question, plaintiff received medical attention for his puncture wound, and was tested for the HIV virus, his results being negative. However, plaintiff testified that it was his understanding that he would need to continue to be tested for the HIV virus for some time. Plaintiff testified that this understanding has caused him to experience stress regarding his own health, and from concerns about transmitting any virus to family members, particularly his grandson. At the time of these initial examinations regarding his puncture wound, no back problems were reported by plaintiff to the attending personnel.
7. Plaintiff alleges that the incident of 25 June 1999 created concerns for his health that caused him to become depressed and has prevented him from returning to work. However, plaintiff's general pracititioner, C.J. Smith, M.D., noted 9 months earlier, on 1 October 1998, that plaintiff had been forced to quit his paralegal classes due to his inability to focus from depression that had resulted from his grandchild's death caused by Sudden Infant Death Syndrome (SIDS).
8. Subsequent to the 25 June 1999 incident, plaintiff began experiencing pain in his back. Over the next six month period, plaintiff's back pain continued to grow worse, and on 17 February 2000, he was seen for this condition by Dr. C.J. Smith whose records reflect that plaintiff related his back condition to the fall on 25 June 1999. An MRI was ordered, the results of which revealed spondylolisthesis at the L5-S1 level, and degenerative changes at the L3-4 and L4-5 levels.
9. Due to continued back symptoms, plaintiff was referred to Dr. Eric Rhoton, who first examined him on 23 May 2000. Following his examination, and review of plaintiff's medical records, Dr. Rhoton recommended surgery. On 30 May 2000, Dr. Rhoton performed a L5 laminectomy, and a left L5-S1 foraminotomy. These procedures were successful, and plaintiff's condition has improved, although he still experiences some difficulty lifting certain items.
10. In the opinion of Dr. Rhoton, the back condition for which he treated plaintiff was medically related to plaintiff's fall at work on 25 June 1999. Additionally, Dr. Rhoton has opined that plaintiff has reached maximum medical improvement, and assigned him a twenty-five (25%) percent permanent partial disability rating for his back.
11. Plaintiff has not been taken out of work by any of his treating physicians, however, based on plaintiff's testimony he is unable to work as a janitor in his former part-time position with defendant-employer due to his compensable back injury. Plaintiff did not miss time from his full time job as a computer operator for the United States Department of Commerce's National Climatic Data Center.
12. On 25 June 1999 plaintiff experienced an interruption of his regular work routine, and the introduction thereby of unusual conditions likely to result in unexpected consequences, which constitutes an injury by accident arising out of and in the course of his employment with defendant-employer. As the direct and natural result of his injury by accident and causally related to his injury by accident, plaintiff sustained a back injury which required surgery.
13. However, based on the greater weight of the evidence, plaintiff's depression is not causally related to the 25 June 1999 incident that resulted in the compensable injury by accident. Further, plaintiff's depression was not materially aggravated by his compensable fall of 25 June 1999 that occurred at his part-time job.
14. Plaintiff has reached maximum medical improvement with respect to his back condition and has a 25% impairment rating. Plaintiff has not been taken out of work at his full or part-time position by his treating physician. Based upon the totality of the evidence, plaintiff is unable to return to work in his former part-time position as a janitor for defendant- employer, however plaintiff has continued and is capable of working in his full time position as a computer operator.
15. At the time of his 25 June 1999 injury by accident, plaintiff had worked for defendant-employer for less than fifty-two (52) weeks. Accordingly, his average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5).
16. Use of the third method provided in N.C. Gen. Stat. § 97-2(5) would bring about a fair and just result, and therefore, is required. Pursuant to the Industrial Commission Form 22 Wage Chart, which is Stipulated Exhibit (3), plaintiff earned $1732.50 during the period of his employment with defendant-employer. The number of weeks, or parts thereof, during which plaintiff earned these wages is nineteen (19). Accordingly, plaintiff's average weekly wage on 25 June 1999 was $91.18, yielding a compensation rate of $60.82.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. At the time of his 25 June 1999 injury by accident, plaintiff had worked for defendant-employer for less than fifty-two (52) weeks, therefore, his average weekly wage cannot be calculated by use of the first or second methods provided in N.C. Gen. Stat. § 97-2(5). Accordingly, use of the third method is required, if fair and just to the parties. N.C. Gen. Stat. § 97-2(5). Use of the third method provides that plaintiff's average weekly wage on 25 June 1999 was $91.18, yielding a compensation rate of $60.82. N.C. Gen. Stat. § 97-2(5).
2. On 25 June 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As a direct and natural result of, and causally related to his 25 June 1999 injury by accident, plaintiff sustained a back injury which required surgery. N.C. Gen. Stat. § 97-2(6).
3. As the result of his 25 June 1999 injury by accident, plaintiff is entitled to be paid by defendant ongoing total disability compensation at the rate of $60.82 for the period from 25 June 1999 through the present, and continuing until such time as he returns to part-time work, or until further order of the Commission. N.C. Gen. Stat. § 97-29; see also,Knight v. Wal-Mart Stores, Inc., 357 N.C. 44, 577 S.E.2d 620 (2003),affirmed, 149 N.C. App. 1, 562 S.E.2d 434 (2002).
4. The greater weight of the evidence fails to demonstrate that plaintiff's depression is causally related to or materially aggravated by his injury by accident of 25 June 1999, therefore plaintiff is entitled to no benefits for his depression. N.C. Gen. Stat. § 97-2(6).
5. As the result of his 25 June 1999 injury by accident, plaintiff is entitled to have defendant pay for all related medical expenses incurred, or to be incurred, excluding expenses associated with his depression. N.C. Gen. Stat. §§ 97-25; 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to plaintiff ongoing total disability compensation at the rate of $60.82 for the period of 25 June 1999 through the present, and continuing until such time as he returns to part-time work, or until further order of the Commission. The amounts having accrued shall be paid to plaintiff in a lump sum.
2. Defendant shall pay for all related medical expenses incurred or to be incurred as the result of plaintiff's 25 June 1999 injury by accident and related conditions, excluding expenses associated with his depression.
3. Defendant shall pay the costs, including an expert witness fee for Dr. Eric Rhoton, which is hereby approved in the amount of $345.00.
This the 6th day of November 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER